IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| R. ALEXANDER ACOSTA, SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR,<br>Plaintiff,<br><br>v.<br><br>CENTRAL LAUNDRY, INC., GEORGE RENGEPES and JIMMY RENGEPES,<br>Defendants. | CIVIL ACTION<br><br>NO. 15-1502 |

## **OPINION**

Presently before the Court is Plaintiff's Motion for Reconsideration (ECF No. 82-1) of the order granting Defendants' Motion in Limine (ECF No. 74) to preclude the lay testimony of Wage and Hour Investigator ("WHI") Jennifer Azeles. For the following reasons, Plaintiff's motion will be granted.

### I. BACKGROUND

This case concerns violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*. On March 24, 2015, Plaintiff filed a complaint against Defendants, alleging extensive FLSA violations. Defendants have admitted liability, conceding to a history of paying certain employees substandard wages and failing to provide appropriate compensation for overtime and breaks. A trial on the issue of damages is ongoing.

The presentation of damages has been complicated by Defendants' failure to maintain accurate employee records, in violation of Section 211 of the FLSA. 29 U.S.C. § 211(c). In the absence of proper documentation, Plaintiff intends to rely upon lay witness WHI Azeles, an experienced wage and hour investigator, to prepare and testify to a series of schedules and

exhibits that reconstruct how she calculated the amount of back wages and liquidated damages that the government contends is owed by Defendants, based upon evidence offered by a representative group of injured employees. Plaintiff did not identify WHI Azeles as an expert witness, and on July 19, 2017, Defendant filed a Motion in Limine, arguing that WHI Azeles's calculations lie outside her personal knowledge, and as such are inadmissible as lay opinion testimony under Federal Rule of Evidence 602. ECF No. 74. The Court denied Defendants' pre-trial motion without prejudice.

In response to the renewal of Defendants' motion at trial, Plaintiff argued that the introduction of WHI Azeles's calculations would be proper given the absence of adequate employee records. Plaintiff maintained that in cases where an employer has violated the FLSA by failing to keep accurate records, an employee need only submit "sufficient evidence from which violations of the [FLSA] and the amount of an award may be reasonably inferred." *See Martin v. Selker Bros.*, 949 F.2d 1286, 1297 (3d Cir. 1991). This argument, while procedurally correct, failed to address the underlying evidentiary issue, namely, whether WHI Azeles's lay opinion testimony was in fact based on the sort of "scientific, technical, or . . . specialized knowledge within the scope of Rule 702" prohibited by Rule 701(c) of the Federal Rules of Evidence. The Court found that WHI Azeles's calculations rested upon certain inferences, including the number of employees not paid the proper rate of pay, the number of hours that each employee worked each week, and the length of their employment. Because these inferences appeared to be the product of WHI Azeles's specialized judgment as a wage and hour investigator, the Court granted Defendants' motion to exclude WHI Azeles's testimony. Plaintiff would, however, be granted leave to seek to qualify WHI Azeles as an expert witness, and Defendants would be provided with an opportunity to depose her. Plaintiff now asks that the

Court reconsider this order, and allow WHI Azeles to testify as a lay witness as to how she calculated back wages and liquidated damages.

## II. LEGAL STANDARD

"The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). A motion for reconsideration will be granted if the movant shows "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the [motion]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (citing *North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)).

## III. ANALYSIS

The standards controlling lay witness opinion testimony are laid out in Rule 701 of the Federal Rules of Evidence:[1]

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701.

---

[1] Defendants have objected to WHI Azeles's proffered testimony pursuant to Federal Rule of Evidence 602, which reads: "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. The Third Circuit has found a witness's personal examination of records introduced at trial sufficient to satisfy the personal knowledge requirement of Rule 602. *See also United States v. Bansal*, 663 F.3d 634, 667 (3d Cir. 2001) (finding an IRS Special Agent qualified to testify under Rule 602 when his testimony was based on a "personal examination of the . . . records actually introduced at trial").

In this case, WHI Azeles has developed personal knowledge of Defendants' employment practices through interviews with Defendants' employees as well as personal examination of Defendants' extant records. The personal knowledge requirement of Rule 602 is thereby satisfied, leaving the Court to consider whether WHI Azeles's proffered testimony will be admissible under Rule 701.

Rule 701 "is rooted in the modern trend away from fine distinctions between fact and opinion." *Asplundh Mfg. Div. v. Benton Harbor Eng'g*, 57 F.3d 1190, 1195 (3d Cir. 1995). But while the rule does attempt to "liberal[ize] . . . the admissibility of opinion evidence," *id.*, lay opinion testimony will be inadmissible unless the witness has a "'reasonable basis grounded in experience or specialized knowledge for arriving at the opinion that he or she expresses.'" *See Eichorn v. AT&T Corp.*, 484 F.3d 644, 649 (3d Cir. 2007) (quoting *Asplundh*, 57 F.3d at 1201).

Accordingly, where an opinion is the reasonable product of a witness's particularized knowledge, it may be admissible under 701(a). *See Donlin v. Philips Lighting North America Corp.*, 581 F.3d 73, 82-83 (3d Cir. 2009). Such knowledge, gained by virtue of personal experience, will support lay opinion testimony, since such testimony is "based upon a layperson's personal knowledge," rather than her technical expertise. *See* Notes to 2000 Amendments. Particularized knowledge may be achieved through either personal experience or specialized training, and, where such experience or training is lacking, the witness's opinion will be precluded. *See Donlin*, 581 F.3d at 83. The *Donlin* court, for instance, found a lay witness's testimony as to speculative front pay damages inadmissible, as the witness had no job-related experience or training in finance upon which to base her calculations. *Id.*; *but see United States v. Muhammad*, 512 Fed. App'x. 154, 161 (3d Cir. 2013) (allowing lay opinion testimony concerning surveillance videotape showing footage of a robbery when witness had reviewed the videotape "for the purpose of reporting details of the robbery," and was familiar with the bank's premises); *United States v. Thompson*, 393 Fed. App'x. 852, 858 (3d Cir. 2010) (allowing lay opinion testimony as to GPS technology from a witness who was "trained in, experienced in, and had verified the functioning of GPS devices"); *Teen-Ed, Inc. v. Kimball Int'l, Inc.*, 620 F.2d 399,

403 (3d Cir. 1980) (allowing an accountant to give lay opinion testimony as to a business's lost profits based on the accountant's review of the business records).

The witness's particularized knowledge must, however, "provide a truly rational basis for his or her opinion," a basis that does not stray into the realm of expert testimony. *See Asplundh*, 57 F.3d at 1201. Subsection (c) was added to Rule 701 in 2000 to help courts police this boundary between lay and expert testimony, with the aim of "eliminat[ing] the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing." *See* Notes to 2000 Amendments; *see also Hirst v. Inverness Hotel Corp.*, 544 F.3d 221, 227 (3d Cir. 2008) ("a party simply may not use Rule 701 as an end-run around the reliability requirements of Rule 702"). While expert testimony "results from a process of reasoning which can be mastered only by specialists in the field," 701(c) demands that lay testimony be grounded on "process[es] of reasoning familiar in everyday life." Notes to 2000 Amendments (quotations and citations omitted); *see also United States v. Garcia*, 413 F.3d 201, 215 (2d Cir. 2005) ("[I]n considering the third prerequisite for lay opinion testimony, a court must focus on the 'reasoning process' by which a witness reached his proffered opinion.").

Thus even testimony otherwise admissible under 701(a) may be barred by 701(c). *See Asplundh*, 57 F.3d at 1199. If the "rational basis" grounding a lay opinion would prove inaccessible to "a person of average intelligence," it will not qualify as lay testimony. *See United States v. Kale*, 445 Fed. App'x. 482, 485 (3d Cir. 2011). In *Asplundh*, for instance, certain types of specialized lay testimony were found inadmissible, despite a witness's particularized knowledge of the subject matter. *See Asplundh*, 57 F.3d at 1199-1201. The court found "technical matters such as product defect or causation" sufficiently speculative and

complex to require that a witness be qualified as an expert under Rule 702. *Id.*; *see also Donlin*, 581 F.3d at 82 (finding "tasks such as calculating life-expectancy, assessing amortization rates . . . or calculating earnings potential in a pension portfolio" complex enough to require expert testimony). Such technical testimony, though perhaps based upon a witness's particularized knowledge of a technical or specialized subject, nevertheless too closely resembles the sort of complex, hypothetical speculation characteristic of expert testimony. *See Asplundh*, 57 F.3d at 1201. A trial court, in performing its judicial gatekeeping function, must exclude such specialized testimony unless the witness meets the expert qualification requirements of Rule 702. *Id.* at 1202.

In this case, however, WHI Azeles's proffered testimony reflects at most a "modest departure[] from the core area of lay opinion testimony," and, as such, for the following reasons, is therefore admissible under Rule 701. *See Asplundh*, 57 F.3d at 1198. WHI Azeles developed particularized knowledge of the facts grounding her testimony by conducting an extensive investigation, interviewing the employees and reviewing the Defendants' extant records. Based upon this experience, she has prepared a series of schedules and exhibits demonstrating how she reconstructed the amount of back wages and liquidated damages owed by Defendants to their injured employees, and now seeks to testify to her calculations and reconstruction. Unlike the lay witness in *Donlin*, who had no background in determining damages, WHI Azeles experience as a wage and hour investigator as well as her extensive investigation of the facts of this case satisfy the particularized knowledge required to testify as a lay witness under 701(a).

Further, WHI Azeles's proffered testimony is reasonably derived from the data that she personally perceived. WHI Azeles's proffered reconstruction is neither complex nor speculative: while her calculations necessarily rest on inferences concerning the number of hours and length

of time worked by employees for whom no records are available, the reasoning process grounding these inferences is accessible to the average layperson. In order to arrive at the base amount of back pay due for each hour worked, WHI Azeles subtracted the amount Defendant paid its employees for regular and overtime hours from the federal minimum wage. She then multiplied these figures by the estimated number of regular and overtime hours worked by each employee.

In determining the number of regular and overtime hours worked by each employee, WHI Azeles relied upon interviews with the employees as well as available time card and hand-scanner records. Where records were incomplete, WHI Azeles determined the number of hours worked for time card employees by first averaging the 255 time cards provided for 10 employees, then averaging the hand-scanner records, and then averaging the two figures together, arriving at an average of 63.72 hours worked per week. ECF No. 76-3. To determine the length of employment for employees whose records were unavailable, WHI Azeles took an average of the length of time worked by employees with relatively complete dates of employment. ECF No. 76-3. She then performed an average that excluded the years worked of the three longest-employed individuals, and came to an average of three years worked. ECF No. 76-3.

Although the number of hours worked by each individual per week as well as the number of years that each individual was employed are inferences, these inferences do not rest on the sort of complicated tasks, like assessing amortization rates that lie outside the realm of lay testimony. *See Donlin*, 581 F.3d at 82. WHI Azeles is merely performing averages based upon her reasonable perception of the evidence available to her, and as such is not relying upon the sort of technical or specialized judgment contemplated by 701(c). Further, these calculations are

not offered as substantive evidence, but rather as an opinion that is "helpful . . . to determining a fact in issue." Fed. R. Evid. 701(b). WHI Azeles's reconstruction shows a method of calculating damages, a methodology which, in this bench trial, the Court is free to accept or reject. Insofar as these calculations show what the damages would be under that methodology, WHI Azeles's proffered testimony offers a helpful synthesis of witness testimony and the information she uncovered during her investigation.

Plaintiff has proffered that WHI Azeles is a seasoned wage and hour investigator, who has spent time developing particularized knowledge of this case through her investigation. While WHI Azeles's testimony necessarily reflects certain inferences that lie outside her personal experience, her reasoning process in developing and relying on these inferences is a matter of simple arithmetic, accessible to the average layperson. There is no "aura of expertise" surrounding this testimony. *See Garcia*, 413 F.3d at 215. Accordingly, given the new evidence provided to the Court through the briefing process, the government's motion for reconsideration shall be granted and, provided that Plaintiff lays a proper foundation, WHI Azeles will be permitted to testify about her back wage calculations.

An appropriate order follows.

**Dated: August 10, 2017**

                                                **BY THE COURT:**

                                                /s/ Wendy Beetlestone
                                                _____
                                                **WENDY BEETLESTONE, J.**