# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| R. ALEXANDER ACOSTA, SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR,<br>Plaintiff, | CIVIL ACTION |
| v. | NO. 15-1502 |
| CENTRAL LAUNDRY INC., GEORGE RENGEPES and JIMMY RENGEPES,<br>Defendants. | |

## MEMORANDUM OPINION

The Secretary of Labor filed suit against Central Laundry Inc., George Rengepes, and Jimmy Rengepes for violations of the Fair Labor Standards Act's (FLSA) minimum wage, overtime, and recordkeeping provisions. The Secretary seeks unpaid compensation, liquidated damages, and injunctive relief to prevent Defendants from committing future violations of the FLSA. Following a bench trial, the Court makes the following findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

### I. FINDINGS OF FACT[1]

Central Laundry is an industrial laundry facility located in Lansdowne, Pennsylvania. The relevant time period for this dispute spans from March 27, 2012 to March 24, 2015. During this period, George Rengepes served as President of Central Laundry. His son, Jimmy, exercised day-to-day control and management, including work assignments, work scheduling, and supervision of laundry floor workers at the worksite. Jimmy was furthermore responsible for hiring and firing workers, setting workers' hours, and setting workers' pay rates and practices. Central Laundry had clients in Pennsylvania, New Jersey, and Delaware.

---

[1] These findings of facts are based, in large part, on the Joint Statement of Stipulated Facts submitted by the parties.

The laundry workers at Central Laundry were responsible for laundering, drying, and ironing linens.[2] During the relevant time period, certain laundry floor workers, who were employed as production floor workers, were paid in cash. In 2011 and 2012, these cash-paid employees received wages between $5.00 and $7.00 per hour. In 2013 and 2014, these cash-paid employees received wages between $6.00 and $8.00 per hour. When the cash-paid employees worked over 40 hours per week, Defendants failed to pay them one and one-half times the wage required under the FLSA's overtime wage provision. 29 U.S.C. § 207.

Defendants also did not keep adequate and accurate records of many of their employees and of the wages, hours, and other conditions of their employment. For instance, although Defendants used a time card machine since the inception of its business in 2001, they produced 255 time cards for ten cash-paid employees that failed to disclose the accurate records of hours worked by and wages paid to these employees. The time cards did not include the employees' last names. The Defendants, moreover, produced records from a hand-scanner used by certain employees from January 17, 2014 to January 30, 2014 to tabulate work hours. The hand-scanner records similarly did not include the employees' last names. The time cards and hand-scanner records were the only time records produced by Defendants for cash-paid production floor workers at Central Laundry.

Working conditions at Central Laundry were difficult to say the least. One former employee, Mirna Aguilar, stated that she worked in a hot environment where she had to stand during her entire shift. As she credibly testified, it was impossible to perform her job functions at the laundry facility while sitting. On one occasion, while Ms. Aguilar was ill and vomited, she

---

[2] The dates of employment and hours worked by specific employee are discussed, *infra*, in Part III and constitute findings of fact under Rule 52(a) of the Federal Rules of Civil procedure.

sought permission to leave work. Jimmy instead brought her to the Central Laundry office, gave her a Gatorade, and had her return to work.

Other employees suffered at Central Laundry as well. For instance, Jimmy threatened to fire an employee named Cleotilde "Coti" Tlacopilco Nolasco if she did not agree to work seven days per week. In another instance, Jimmy discouraged an employee named Guadalupe Pina from eating lunch. According to Ms. Pina, Jimmy would become angry that she was not performing work during her lunch break. Jimmy also once suspended an employee named Maria Catalina Escobar for three days because she left Central Laundry at midnight Sunday, instead of 3:00 or 4:00 a.m. as she usually did, after working since 9:00 a.m. Saturday.

## II. PROCEDURAL HISTORY

The Secretary filed suit against Defendants, alleging that they failed to pay their employees the statutorily prescribed rates of minimum wage and overtime pay, and also failed to maintain adequate employment records of their employees under the FLSA. In the complaint, the Secretary attached a document titled "Schedule A," which included the names of 36 current and former Central Laundry employees who were purportedly underpaid under the FLSA. After the Secretary moved for partial summary judgment, this Court concluded that there was no genuine dispute of material fact as to the following issues:

- Central Laundry violated FLSA's minimum wage requirement, 29 U.S.C. § 206;

- Central Laundry violated FLSA's overtime pay requirement, 29 U.S.C. § 207(a)(1);

- Central Laundry violated FLSA's recordkeeping requirement, 29 U.S.C. § 211(c);

- George and Jimmy were "employers" under FLSA, 29 U.S.C. § 203(d), and were thus individually liable for Central Laundry's FLSA violations;

3

- Defendants' minimum wage and overtime violations were willful and Defendants are thus liable for FLSA violations preceding the Secretary's commencement of the action by three years under 29 U.S.C. § 255(a);

- Defendants' conduct was not in good faith and they did not have reasonable grounds for believing their conduct complied with the FLSA, and they were thus liable for liquidated damages in an amount equal to their liability for back wages under 29 U.S.C. § 216(b).

This matter then proceeded to trial on the limited matter of remedies: the amount of back wages owed to Defendants' employees and the propriety of injunctive relief. The issues now before the Court, upon conclusion of the bench trial, are: (1) which employees were employed during the relevant time period; (2) how many hours they worked; (3) what amount of money, if any, they are owed pursuant to the wage requirements of the FLSA; (4) what amount of liquidated damages, if any, should be assessed against Defendants; and (5) whether a prospective injunction should issue against Defendants to prevent future violations of the FLSA.

### III. DISCUSSION

#### a. Back Wages

An employer who fails to provide minimum wage and appropriate overtime pay "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation. . . ." 29 U.S.C. § 216(b). Minimum wage under the FLSA is $7.25 per hour. *Id.* § 206(a). The minimum rate of overtime pay is $10.88 per hour. *See id.* § 207(a) (employee must receive "a rate not less than one and one-half times the regular rate at which he is employed" when working longer than forty hours in a workweek).

Where, as here, the employer's payment records are inadequate, an employee need only prove that he "performed work for which he was improperly compensated" and produce "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1297 (3d Cir. 1991) (quoting

*Anderson v. Mt. Clemens Pottery*, 328 U.S. 680 (1946)); *see also Reich v. Gateway Press, Inc.*, 13 F.3d 685, 701 (3d Cir. 1994). Indeed, as noted above, Central Laundry failed to comply with the FLSA's recordkeeping requirement. 29 U.S.C. § 211(c). Accordingly, "[t]he burden of any consequent imprecision from the absence of an employer's records must be borne by that employer." *Selker Bros.*, 949 F.2d at 1297.

The question here, then, is whether the Secretary has submitted "sufficient evidence from which violations of [FLSA] and the amount of an award may be reasonably inferred." *Id*. If so, the burden shifts to Defendants "to come forward with evidence of the precise amount of earnings received and work performed by the operators or with evidence to negate the district court's reasonable inferences based on the evidence." *Id*.; *Rosano v. Twp. of Teaneck*, 754 F.3d 177, 188 (3d Cir. 2014) ("Once this inference is created, the burden shifts to the employer to rebut that inference."). For purposes of calculating damages under the FLSA, the Secretary has identified four categories of employees at Central Laundry: (i) interviewed employees; (ii) payroll employees; (iii) time-record employees; and (iv) hand-scanner employees. With the burden-shifting framework in mind, the Court evaluates the evidence provided by the Secretary and the Defendants' response thereto for each category of Central Laundry employee.

### i. Interviewed Employees

Of the thirteen employees who were interviewed by the Department of Labor (DOL), the Secretary has provided sufficient evidence from which an amount of an award may be justly and reasonably inferred for the following individuals:

- Mirna Aguilar. Ms. Aguilar testified that she worked on Mondays through Fridays from 8:00 a.m. to 7:00 p.m., 8:00 p.m., or 10:00 p.m. at Central Laundry. She further testified that on Saturdays, she worked from 9:00 a.m. to either 10:30 p.m. or 12:30 a.m. the next morning. Ms. Aguilar worked from March 27, 2012 to August 1, 2012 (18 weeks). Defendants have not come forth with any evidence of Ms. Aguilar's precise earnings, nor have they rebutted the inference

5

that Ms. Aguilar worked the number of hours that she testified to. The parties also agree that Ms. Aguilar was paid $5.00 per hour for her first 40 hours and $7.50 per hour for overtime. Based on the DOL's Wage and Hour Investigator's ("WHI") calculations, the weighted average of Ms. Aguilar's hours for any given week was 75.42. In light of the minimum wage and overtime requirements under the FLSA, 29 U.S.C. §§ 206, 207(a)(1), Defendants owe Ms. Aguilar **$3,771.77** in total.

- Juan Cordova. The parties stipulated to the introduction of an Employee Personal Interview Statement, dated November 14, 2013, pertaining to Mr. Cordova. Mr. Cordova's Statement provided that he worked about 70 to 80 hours per week. Therefore, as a matter of just and reasonable inference, Mr. Cordova worked an average of 75 hours per workweek. Pursuant to his Statement, Mr. Cordova worked at Central Laundry from March 27, 2012 to November 14, 2013 (85.43 weeks).[3] During this period, Mr. Cordova was paid $5.00 per hour for all hours worked up to and including 40 hours per workweek. Thus, Defendants owe Mr. Cordova $7,688.70 for minimum wage back wages. During this period, Mr. Cordova was paid $7.50 per hour for all hours worked in excess of 40 hours per workweek. Thus, Defendants owe Mr. Cordova $10,106.37 for overtime back wages. In light of the minimum wage and overtime requirements under the FLSA, 29 U.S.C. §§ 206, 207(a)(1), Defendants owe Mr. Cordova **$17,795.07** in total.

- Julia Aide Cruz Vargas. The parties stipulated to the introduction of two Employee Personal Interview Statements pertaining to Ms. Vargas. In one of the statements, Ms. Vargas claims to have worked about 80 hours per week. Defendants have accepted this figure. Defendants acknowledge that she worked from November 20, 2012 to December 31, 2013 (58 weeks) at a rate of $5.00 per hour. Thus, for this period, Ms. Vargas was owed $5,220 for minimum wage. During that same period, she was paid $7.50 per hour for all hours worked in excess of 40 hours in a workweek. Thus, for this period, Ms. Vargas was owed $7,841.60 for overtime wages. Defendants also acknowledge that she was employed between January 1, 2014 and July 7, 2014 (27 weeks) and was paid $6.00 per hour. Thus, for this period, Ms. Vargas was owed $911.25 for minimum wage. During that same period, she was paid $9.00 per hour for all hours worked in excess of 40 hours in a workweek. Thus, for this period, Ms. Vargas was owed $2,030.40 for overtime back wages. In light of the minimum wage and overtime requirements under the FLSA, 29 U.S.C. §§ 206, 207(a)(1), Defendants owe Ms. Vargas **$16,003.25** in total. Insofar as the Secretary relies on the two Employee Personal Interview Statements signed by Ms. Vargas in support of her FLSA award, the two documents are not reliable enough to determine the dates and hours of her employment because they contradict one another. For instance, in her statement signed on November 20, 2013, Ms.

---

[3] The Secretary has not pointed to any evidence that would create the just and reasonable inference that Mr. Cordova worked during the entirety of the relevant time period.

6

Vargas claims to have worked at Central Laundry since November 2012, working approximately 90 hours per week. She did not reportedly work on Fridays. However, in her July 18, 2014 statement, Ms. Vargas claims to have worked at Central Laundry since September 2012, working approximately 103 hours per week. Ms. Vargas also claims to have worked on Fridays.

- Maria Catalina Escobar. The parties agree that Ms. Escobar was employed by Central Laundry from May 2007 to August 10, 2014. The parties further agree that, as relevant here, she was employed from March 27, 2012 to August 10, 2014 (124 weeks) and that she worked an average 86 hours per week. During this time period, Ms. Escobar was paid $5.00 per hour for all hours worked up to and including 40 hours per workweek. Ms. Escobar was paid $7.50 per hour for all hours worked in excess of 40 hours per workweek. The parties agree that, pursuant to the minimum wage and overtime requirements under the FLSA, 29 U.S.C. §§ 206, 207(a)(1), Defendants owe Ms. Escobar **$30,411.00** in total.

- Reina Gutierrez Cruz. The parties agree that Ms. Cruz was employed by Central Laundry from March 27, 2012 to September 15, 2013 (77 weeks). The parties further agree that she worked an average of 78.5 hours per workweek. During this time period, Ms. Cruz was paid $5.00 per hour for all hours worked up to and including 40 hours per workweek. Ms. Cruz was paid $7.50 per hour for all hours worked in excess of 40 hours per workweek. The parties agree that, pursuant to the minimum wage and overtime requirements under the FLSA, 29 U.S.C. §§ 206, 207(a)(1), Defendants owe Ms. Cruz **$16,935.19** in total.

- Efigenia Lopez. The parties agree that Ms. Lopez was employed by Central Laundry from March 27, 2012 to July 1, 2013 (66 weeks). In her signed declaration, Ms. Lopez stated that she worked approximately 60 to 70 hours per workweek. Defendants do not dispute this estimate. Accordingly, a reasonable inference is that Ms. Lopez worked 65 hours per week. During this time period, Ms. Lopez was paid $5.00 per hour for all hours worked up to and including 40 hours per workweek. Thus, for this period, Ms. Lopez is owed $5,940 in minimum wage. Ms. Lopez was paid $7.50 per hour for all hours worked in excess of 40 hours per workweek. Thus, for this period, Ms. Lopez is owed $5,577 in overtime back wages. In light of the minimum wage and overtime requirements under the FLSA, 29 U.S.C. §§ 206, 207(a)(1), Defendants owe Ms. Lopez a total of **$11,517.00**.

- Juana Mexica. The parties agree that Ms. Mexica was employed by Central Laundry from June 1, 2012 to November 1, 2012, and again from June 1, 2013, to November 1, 2013. Ms. Mexica thus worked at Central Laundry for 44 weeks. The parties furthermore agree that Ms. Mexica worked 26.5 hours per workweek and that she is owed a total of **$2,623.50** for minimum wage back wages.

- Delia Mijanos Mus. The parties agree that Ms. Mus was employed by Central Laundry from March 27, 2012 to December 1, 2012 (36.71 weeks). The

7

Secretary has produced a declaration in which Ms. Mus stated that she worked approximately 65 to 72 hours per week. Defendants do not dispute this estimate. Accordingly, a reasonable inference is that Ms. Mus worked 68.5 hours per week. During this time period, Ms. Mus was paid $5.00 per hour for all hours worked up to and including 40 hours per workweek. Thus, for this period, Ms. Mus is owed $3,303.90 for minimum wage back wages. According to her declaration, Ms. Mus was paid $7.00 per hour for all hours worked in excess of 40 hours per workweek. Defendants have not pointed to any evidence to rebut this claim, though they note that this rate of overtime pay is inconsistent with those of other interviewed employees. Given the facts of this case, the Court finds that it may be reasonably inferred that Ms. Mus was paid $7.50 per hour for all hours worked in excess of 40 hours per workweek. Thus, for this period, Ms. Mus is owed $6,598.61 for overtime wages. In light of the minimum wage and overtime requirements under the FLSA, 29 U.S.C. §§ 206, 207(a)(1), Defendants owe Ms. Mus a total of **$9,902.51**.

- Maria Moz de Calderon. As relevant here, the parties agree that Ms. Calderon was employed by Central Laundry from March 27, 2012 to August 1, 2013. Ms. Calderon worked an average of 50 hours per workweek. She was paid $5.00 per hour for all hours worked up to and including 40 hours per workweek, and $7.50 per hour for all hours worked in excess of 40 hours per workweek. The parties agree that Ms. Calderon is owed **$8,662.50** based on both minimum wage and overtime back wages.

- Guadalupe Pina. As relevant here, the parties agree that Ms. Pina was employed by Central Laundry from August 31, 2013 to August 2, 2014. From August 31, 2013 to January 3, 2014, Ms. Pina worked an average of 90 hours per workweek. From January 4, 2014 to August 2, 2014, Ms. Pina worked an average of 30 hours per workweek. From August 31, 2013 to November 29, 2013, Ms. Pina was paid $5.00 per hour for all hours worked up to and including 40 hours per workweek. The parties agree that, during this period, Ms. Pina was paid $7.00 per hour for all hours worked in excess of 40 hours per workweek. From November 30, 2013 to August 2, 2014, Ms. Pina was paid $6.00 per hour for all hours worked up to and including 40 hours per workweek. During this period, Ms. Pina was paid $8.00 per hour for all hours worked in excess of 40 hours per workweek. The parties agree that Ms. Pina is owed **$5,782.50** based on both minimum wage and overtime back wages.

- Yohani Sanchez. Although the parties agree that Ms. Sanchez was employed by Central Laundry starting in November 29, 2013, they dispute the end date. It may reasonably be inferred that Ms. Sanchez worked until at least August 2, 2014, based on the declaration of another Central Laundry employee, meaning that she worked about 35.29 weeks in total. It may also be reasonably be inferred

that she worked 95 hours per workweek.[4] During this time period, Ms. Sanchez was paid $6.00 per hour for all hours worked up to and including 40 hours per workweek. Thus, for this period, Ms. Sanchez is owed $1,764.50 for minimum wage back wages. During this time period, and as the parties agree, Ms. Sanchez was paid $9.00 per hour for all hours worked in excess of 40 hours per workweek. Thus, for this period, Ms. Sanchez is owed $3,648.99 for overtime back wages. In light of the minimum wage and overtime requirements under the FLSA, 29 U.S.C. §§ 206, 207(a)(1), a just and reasonable inference is that Defendants owe Ms. Sanchez a total of **$5,413.49**.

- Cleotilde "Coti" Tlacopilco Nolasco. The parties agree that Ms. Nolasco was employed by Central Laundry from at least March 27, 2012 to August 2, 2014. Ms. Nolasco worked about 60 hours per workweek. From March 27, 2012 to November 29, 2013 (87.57 weeks), Ms. Nolasco was paid $5 per hour for all hours worked up to and including 40 hours per work week. Thus, for this period, Ms. Nolasco is owed $7,881.30 for minimum wage back wages. From March 27, 2012 to November 29, 2013 Ms. Nolasco was paid $7.50 per hour for all hours worked in excess of 40 hours per workweek. Thus, for this period, Ms. Nolasco is owed $5,919.73 for overtime back wages. From November 30, 2012 until August 2, 2013 (35.14 weeks), Ms. Nolasco was paid $6.00 per hour for all hours worked up to and including 40 hours per workweek. Thus, for this period, Ms. Nolasco is owed $1,124.48 for minimum wage back wages. From November 30, 2012 until August 2, 2013, Ms. Nolasco was paid $9.00 per hour for all hours worked in excess of 40 hours per workweek. Thus, for this period, Ms. Nolasco is owed $1,321.26. In light of the minimum wage and overtime requirements under the FLSA, 29 U.S.C. §§ 206, 207(a)(1), a just and reasonable inference is that Defendants owe Ms. Nolasco **$16,246.77**.

By contrast, the Secretary has failed to provide sufficient evidence from which an amount of an award may be reasonably inferred for Ricardo Apanco Tepo. In support of Mr. Tepo's dates of employment and average hours worked, the Secretary principally relies on an Employee Personal Interview Statement, dated July 18, 2014, signed by both Ms. Vargas and Mr. Tepo. However, as noted above, Ms. Vargas's declaration was not reliable. Thus, to the extent that the Secretary seeks to use the declaration to define the extent of work performed by Mr. Tepo, he has not met his evidentiary burden. The Secretary has not otherwise marshaled any other

---

[4] Ms. Sanchez's declaration regarding her hours contains inconsistent estimates of time worked at Central Laundry. On the one hand, she claims that she worked 95 hours per workweek. On the other, the description of her daily and weekend shifts amounts to 109 hours per workweek. The Secretary has pointed to no other evidence pertaining to Ms. Sanchez's hours. Given the testimony of her fellow co-workers who worked below 100 hours per workweek, it is more reasonable to infer that Ms. Sanchez worked 95 hours.

evidence in support of the alleged work performed by Mr. Tepo. Accordingly, Mr. Tepo is not entitled to an award under the FLSA.

### ii. Payroll Employees

The Secretary has provided insufficient evidence from which an amount of an FLSA award may be justly and reasonably inferred for the three payroll employees: Inderjeet Kaur, Wosene Kenore, and Nigatua Kenore. *See Selker Bros.*, 949 F.2d at 1297.

Specifically, the Secretary has not identified any factual basis in support of his claim that Kaur, Wosene, and Nigatua were uncompensated for their two 15-minute rest periods during the relevant time period. Kaur stated in a signed declaration provided by the DOL that his "paycheck [was] always right." Similarly, Nigatua stated in an identical document that his "paycheck was never wrong." The Secretary has not otherwise pointed to any evidence that would suggest that Wosene was uncompensated for breaks.

### iii. Time-Record Employees

Ten time-record employees at Central Laundry were improperly compensated. Despite using a time-card machine since 2001, Defendants produced an incomplete set of time cards for these employees in response to the Secretary's inquiries. Indeed, Defendants produced only 255 time cards for ten employees during the relevant time period of three years. As a result of Defendants' severely deficient recordkeeping, the Secretary had to reconstruct their average hours worked per week and the dates of employment to calculate the appropriate minimum wage and overtime compensation owed.[5] The Secretary's methodology was proper as to four of the time-record employees. For the remaining five time-record employees, no just and reasonable

---

[5] The methodology for calculating back wages under the FLSA was previously held admissible as lay testimony. *Acosta v. Central Laundry, Inc.*, 273 F.Supp.3d 553 (E.D. Pa. 2017).

extrapolations may be made as to the purported extent of their work.[6] *Selker Bros.*, 949 F.2d at 1297.

### 1. *Alejandra, Elvia, Filiberto, and Miguel*

A just and reasonable inference regarding the amount of work and pay may only be made as to Alejandra Last Name Unknown ("LNU"), Elvia LNU, Filiberto "Gilberto" Chub, and Miguel LNU. For these four employees, the Secretary produced a sufficient number of time cards that included relatively long employment histories.[7] As a matter of just and reasonable inference, the Secretary's methodology in calculating these time-record employees' FLSA award is proper in three respects. *See Selker Bros.*, 949 F.2d at 1297.

First, the Secretary's estimation of the four time-record employees' dates of employment is reasonable. To determine the average number of years that a time-record employee worked at Central Laundry, the WHI evaluated the start and end dates for Schedule A employees with relatively complete dates of employment. Even after removing outlier figures, such as the three employees with the longest employment history at Central Laundry, the WHI found that the average number of years worked per employee was about three years. Given Alejandra, Elvia, Gilberto, and Miguel's long employment histories, the average employment history of a Central

---

[6] Only nine of the time-record employees shall be discussed in this section. Although Ms. Tlacopilco Nolasco was a time-record employee, the DOL interviewed her. Her FLSA award is discussed, *supra*, in Section III.a.i, which pertains to interviewed Central Laundry employees.

[7] More specifically, the number of time cards for the four time-record employees was as follows:

- For Alejandra, the Secretary pointed to 35 time cards, ranging from December 29, 2012 to October 4, 2013. There were 5 missing time cards for the period provided.
- For Elvia, the Secretary pointed to 21 time cards, ranging from October 8, 2011 to September 19, 2014. There were 133 missing time cards for the period provided.
- For Gilberto, the Secretary pointed to 54 time cards, ranging from October 8, 2011 to March 14, 2014. There were 73 missing time cards for the period provided.
- For Miguel, the Secretary pointed to 68 time cards, ranging from October 8, 2011 to October 4, 2013. There were 36 missing time cards for the period provided.

Laundry employee, as well as the Defendants' failure to produce a complete set of time cards during the relevant time period, it may be reasonably and justly inferred that they worked at Central Laundry from March 27, 2012 to March 24, 2015.

Second, the Secretary's estimation of the average hours worked was similarly reasonable. In calculating this figure, the WHI examined Alejandra, Elvia, Gilberto, and Miguel's respective time cards, each of which reflected the hours worked in one workweek. She then averaged out the various time cards associated with each particular employee.

Third, the Secretary's estimation of Defendants' wage payments to the four time-record employees was sound. The wage rate for hours worked up to and including 40 hours per workweek and for hours exceeding 40 hours per workweek is consistent with Defendants' previous payments to other Schedule A employees. *See Reich*, 13 F.3d at 701 ("Courts commonly allow representative employees to prove violations with respect to all employees."); *id.* at 702 ("[T]he Secretary can rely on testimony and evidence from representative employees to meet the initial burden of proof requirement."). In sum, by proffering these time cards, the Secretary has given sufficient evidence to show by just and reasonable inference the amount of compensation Alejandra, Elvia, Gilberto, and Miguel are owed. *See Selker Bros.*, 949 F.2d at 1297. While the extrapolations regarding dates and hours worked may not be mathematically precise, this is a just inference under the circumstances. *See id*. Indeed, given the strenuous working conditions and long hours that Defendants imposed upon the Central Laundry employees, as well as the Defendants' poor recordkeeping practices, the inferences here are warranted.

Defendants, in turn, have failed to meet their burden of coming forward with evidence of "the precise amount of earnings received and work performed" by these four time-record

employees or with evidence to "negate the reasonable inferences" drawn from their time cards.[8]
*Id.* The Court thus adopts all of the Secretary's calculations for Alejandra, Elvia, Gilberto, and Miguel. *See id.* ("In the absence of adequate employer records of employees' wages and hours, as required by the FLSA, the solution is not to penalize the employees by denying recovery based on an in ability to prove the extent of undercompensated work, but rather to allow the employee or the Secretary to submit sufficient evidence from which violations of the Act and the amount of an award may be reasonably inferred."); *id.* ("The employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with the [recordkeeping requirements] of the [FLSA].") (quoting *Mt. Clemens Pottery*, 328 U.S. at 688); *Perez v. Super Maid, LLC*, 55 F. Supp. 3d 1065, 1080 (N.D. Ill. 2014) (accepting Secretary's wage calculations based on reconstruction of average hourly rate and total time worked because defendant submitted incomplete records). These calculations are as follows:

- Alejandra LNU was employed by Central Laundry from March 27, 2012 to March 24, 2015. During this period, she worked an average of 71.41 hours per workweek. From March 27, 2012 to November 29, 2013, she was paid $5 per hour for all hours worked up to and including 40 hours per workweek. During this time, she was also paid $7.50 per hour for all hours worked in excess of 40 hours per workweek. From November 30, 2013 until March 24, 2015, she was paid $6.00 per hour for all hours worked up to and including 40 hours per workweek. During this period, she was paid $9.00 per hour for all hours worked in excess of 40 hours per workweek. Alejandra therefore is owed $11,270 in minimum wage back wages and $13,632.98 in overtime back wages. Defendants owe Alejandra **$24,902.98** in total.

- Elvia LNU was employed by Central Laundry from March 27, 2012 to March 24, 2015. During this period, she worked an average of 59.72 hours per workweek. From March 27, 2012 to November 29, 2013, she was paid $5 per hour for all hours worked up to and including 40 hours per workweek. During this time, she

---

[8] Defendants instead contend that there was "no credible evidence" in support of the Secretary's figures and that the estimations were "based entirely and exclusively on . . . presumptions and guesses." However, as noted, the time cards for Alejandra, Elvia, Filiberto, and Miguel provide a sufficient evidentiary basis from which an FLSA award may be justly and reasonably inferred.

was also paid $7.50 per hour for all hours worked in excess of 40 hours per workweek. From November 30, 2013 until March 24, 2015, she was paid $6.00 per hour for all hours worked up to and including 40 hours per workweek. During this period, she was paid $9.00 per hour for all hours worked in excess of 40 hours per workweek. Elvia therefore is owed $11,999.38 in minimum wage back wages and $9,153.88 in overtime back wages. Defendants owe Elvia **$21,153.26** in total.

- Miguel LNU was employed by Central Laundry from March 27, 2012 to March 24, 2015. During this period, he worked an average of 80.35 hours per workweek. From March 27, 2012 to November 29, 2013, he was paid $5 per hour for all hours worked up to and including 40 hours per workweek. During this time, he was also paid $7.50 per hour for all hours worked in excess of 40 hours per workweek. From November 30, 2013 until March 24, 2015, he was paid $6.00 per hour for all hours worked up to and including 40 hours per workweek. During this period, he was paid $9.00 per hour for all hours worked in excess of 40 hours per workweek. Miguel therefore is owed $11,400 in minimum wage back wages and $17,250.14 in overtime back wages. Defendants owe Miguel **$28,650.14** in total.

- Filiberto ("Gilberto") Chub was employed by Central Laundry from March 27, 2012 to March 24, 2015. During this period, he worked an average of 59.97 hours per workweek. From March 27, 2012 to November 29, 2013, he was paid $5 per hour for all hours worked up to and including 40 hours per workweek. During this time, he was also paid $7.50 per hour for all hours worked in excess of 40 hours per workweek. From November 30, 2013 until March 24, 2015, he was paid $6.00 per hour for all hours worked up to and including 40 hours per workweek. During this period, he was paid $9.00 per hour for all hours worked in excess of 40 hours per workweek. Mr. Chub is therefore owed $8,705.63 in minimum wage back wages and $8,964.69 in overtime back wages. Defendants owe Mr. Chub **$17,670.32** in total.

### 2. *Carmen, Florencia, Florenta, Marco, and Victoria*

By contrast, no just and reasonable inferences may be made as to the length of employment for the other five time-record employees – Carmen LNU, Florencia LNU, Florenta LNU, Marco LNU, and Victoria LNU. The Secretary has not provided a persuasive reason why justice and reasonableness render it appropriate to make extrapolations from these employees' few time cards that had relatively short time horizons.[9] The Secretary therefore has not met his

---

[9] As previously held, the WHI's reconstruction shows a methodology of calculating damages that "the Court is free to accept or reject." *Central Laundry*, 273 F. Supp. 3d at 558.

evidentiary burden with respect to these employees regarding the alleged time worked.[10] *See*

*Selker Bros.*, 949 F.2d at 1297.

However, because there is evidence of Central Laundry's pattern of underpayment as to the other Schedule A employees, it may still be reasonably inferred that these five time-record employees are entitled to a smaller FLSA award. *See Reich*, 13 F.3d at 701. Defendants have not otherwise rebutted this inference. The calculations for these employees are as follows:

- Carmen LNU worked at Central Laundry from June 14, 2014 to September 19, 2014 (14 weeks). She worked an average of 48 hours per workweek. During this period, Carmen was paid $6.00 per hour for all hours worked up to and including 40 hours per workweek. Thus, for this period, Carmen is owed $700 for minimum wage back wages. During this period, Carmen was paid $9.00 per hour for all hours worked in excess of 40 hours per workweek. Thus, for this period, Carmen is owed $210.56 for overtime back wages. In light of the minimum wage and overtime requirements under the FLSA, 29 U.S.C. §§ 206, 207(a)(1), Defendants owe Carmen **$910.56**.

- Florencia LNU worked at Central Laundry from June 29, 2013 to July 12, 2013 (2 weeks). She worked an average of 69.88 hours per workweek. During this period, Florencia was paid $5.00 per hour for all hours worked up to and including 40 hours per workweek. Thus, for this period, Florencia is owed $180.00 for minimum wage back wages. During this period, Florencia was paid $7.50 per hour for all hours worked in excess of 40 hours per workweek. Thus, for this period, Florencia is owed $202.99 for overtime back wages. In light of the minimum wage and overtime requirements under the FLSA, 29 U.S.C. §§ 206, 207(a)(1), Defendants owe Florencia **$382.99**.

- Florenta LNU worked at Central Laundry from July 5, 2014 to July 11, 2014 (1 week). Florenta worked 66.5 hours in this week. During this period, Florenta was paid $6.00 per hour for all hours worked up to and including 40 hours per workweek. Thus, for this period, Florenta is owed $50.00 for minimum wage back wages. During this period, Florenta was paid $9.00 per hour for all hours worked in excess of 40 hours per workweek. Thus, for this period, Florenta is

---

[10] The number of time cards for the remaining five time-record employees was as follows:

- For Carmen, the Secretary pointed to 8 time cards, ranging from June 14, 2014 to September 19, 2014. There were 6 missing time cards for the period provided.
- For Florencia, the Secretary pointed to 2 time cards, ranging from June 29, 2013 to July 12, 2013.
- For Florenta, the Secretary pointed to 1 time card, ranging from July 5, 2014 to July 11, 2014.
- For Marco, the Secretary pointed to 1 time card, ranging from July 13, 2013 to July 19, 2013.
- For Victoria, the Secretary pointed to 1 time card, ranging from July 5, 2014 to July 11, 2014.

owed $136.30 for overtime back wages. In light of the minimum wage and overtime requirements under the FLSA, 29 U.S.C. §§ 206, 207(a)(1), Defendants owe Florenta **$186.30**.

- Marco LNU worked at Central Laundry from July 13, 2013 to July 19, 2013 (1 week). Marco worked 97.25 hours in this week. During this period, Marco was paid $5.00 per hour for all hours worked up to and including 40 hours per workweek. Thus, for this period, Marco is owed $90.00 for minimum wage back wages. During this period, Marco was paid $7.50 per hour for all hours worked in excess of 40 hours per workweek. Thus, for this period, Marco is owed $193.51 for overtime back wages. In light of the minimum wage and overtime requirements under the FLSA, 29 U.S.C. §§ 206, 207(a)(1), Defendants owe Marco **$283.51**.

- Victoria LNU worked at Central Laundry from July 5, 2014 to July 11, 2014 (1 week). Victoria worked 48 hours in this week. During this period, Victoria was paid $6.00 per hour for all hours worked up to and including 40 hours per workweek. Thus, for this period, Victoria is owed $50.00 for minimum wage back wages. During this period, Victoria was paid $9.00 per hour for all hours worked in excess of 40 hours per workweek. Thus, for this period, Victoria is owed $15.04. In light of the minimum wage and overtime requirements under the FLSA, 29 U.S.C. §§ 206, 207(a)(1), Defendants owe Victoria **$65.04**.

### iv. Hand-Scanner Employees

Although the Secretary contends that eleven hand-scanner employees at Central Laundry were improperly compensated, the hand-scanner records here are too scant to support a just and reasonable inference that they are entitled to an FLSA award for two reasons. First, the time duration of the records, which span two weeks from January 17, 2014 to January 30, 2014, is not long enough to justify the Secretary's extrapolation that the hand-scanner employees worked at Central Laundry for three years. Second, the WHI could not definitively testify whether the hand-scanner employees were paid in cash or even worked at Central Laundry. Indeed, the WHI learned about the hand-scanner employees only by interviewing other Central Laundry employees. The WHI testified that she was uncertain whether she completely recalled these interview statements from the other Central Laundry employees. Because the Secretary has not

16

satisfied his evidentiary burden that the eleven hand-scanner employees in fact performed work for which they were not paid, an FLSA award would be improper in this instance.

### v. Total Back Wages Owed

Based on the above figures, Defendants owe twenty-one Central Laundry employees a total of $239,269.65. Because Defendants failed to produce adequate records regarding their employees' wages and hours, these damages are appropriate, "even though the result may only be approximate." *Reich*, 13 F.3d at 701; *Selker Bros.*, 949 F.2d at 1297 ("The district court was well within its authority to award damages on behalf of the aggrieved employees, even though the result was approximate, because the uncertainty in awarding the damages was a result of [Defendant's] failure to keep records as required by the FLSA.").

### b. Liquidated Damages

Section 16 of the FLSA authorizes an award of liquidated damages against the employer. 29 U.S.C. § 216(b). "Any employer who violates the [minimum wage or overtime provisions of the FLSA] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." *Id.* The FLSA's liquidated damages provision, in other words, doubles the employees' award for minimum wage and overtime back wages owed. *Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 908 ("Double damages are the norm, single damages the exception. . . .") (quoting *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 310 (7th Cir. 1986)). In the FLSA context, "liquidated damages are compensatory, not punitive in nature" because they are designed "to compensate employees for losses they might suffer by reason of not receiving their lawful wage at the time it was due." *Id.* at 907 (3d Cir. 1991)

(quoting *Marshall v. Brunner*, 668 F.2d 748, 753 (3d Cir. 1982)). "Congress has provided courts with some discretion to limit or not award liquidated damages." *Id.*; 29 U.S.C. § 260.

Liquidated damages here are appropriate. As previously held, Defendants failed to show that they had good faith and reasonable grounds for believing that their actions did not violate FLSA. Defendants also stipulated that they lacked a good faith defense regarding the failure to pay minimum wage and overtime. Because Defendants owe $239,269.65 in back wages, the liquidated damages here are $239,269.65. Therefore, the grand total for the FLSA award against Defendants is **$478,539.30**.

### c. Injunctive Relief

Section 17 of FLSA provides for prospective injunctive relief. 29 U.S.C. § 217. Whether an injunction should issue "is within the court's sound discretion." *Solis v. A-1 Mortg. Corp.*, 934 F. Supp. 2d 778, 815 (W.D. Pa. 2013). The relevant factors in deciding whether to issue an injunction are: (1) "the employer's past conduct"; (2) the employer's "current conduct"; and (3) "most importantly, whether the employer can be counted on to comply with the FLSA in the future." *Id.* (citing *Reich v. Petroleum Sales, Inc.*, 30 F.3d 654, 657 (6th Cir. 1994)).

Injunctive relief is warranted under these three factors. First, as the Court previously concluded, Defendants lacked a good-faith basis for believing that their prior conduct complied with the FLSA. Second, in a related but separate case brought forth by the Secretary against Defendants, the Court recently granted preliminary injunctive relief in light of Defendants' failure to pay minimum wage and overtime wage, and to maintain complete and accurate records of employees' wages and hours. Third, given Defendants' repeated failure to comply with the FLSA, as well as the scale of their FLSA violations that affected numerous employees, they cannot be trusted to comply with the FLSA in the future. Furthermore, in their briefing,

Defendants stated that they "do not oppose any injunctive relief being directed mandating compliance with all requirements of the [FLSA]."

Accordingly, the Secretary's request for injunctive relief shall be granted. Defendants are hereby enjoined, under Section 17 of the FLSA, from:

- failing to pay their employees the appropriate amount of minimum wage under 29 U.S.C. § 206(a);

- failing to pay their employees the appropriate amount of overtime compensation at one and one half of their regular rates of pay for all overtime hours worked in excess of 40 hours per week under 29 U.S.C. § 207(a); and

- failing to make, keep, and preserve complete and accurate records of their employees and of the wages, hours, and other conditions of employment that they maintain under 29 U.S.C. § 211(c), and the Regulations issued and found at 29 C.F.R. Part 516.

## IV. CONCLUSIONS OF LAW

Pursuant to Rule 52(a) of the Federal Rules of Civil Procedure and based on the foregoing discussion, the Court makes the following three conclusions of law:

1. Due to violations of the FLSA's minimum wage and overtime requirements, 29 U.S.C. §§ 206, 207(a)(1), certain employees identified in Schedule A of the Secretary's Complaint are entitled to an FLSA award in the amounts provided for in Part III.

2. Defendants are liable for liquidated damages in the amount of $239,269.65 under 29 U.S.C. § 216(b).

3. Injunctive relief under 29 U.S.C. § 217 is warranted to prevent Defendants' future violations of the FLSA's minimum wage and overtime requirements, 29 U.S.C. §§ 206(a), 207(a), as well as the FLSA's recordkeeping requirement, 29 U.S.C. § 211(c).

An appropriate order follows.   **BY THE COURT:**

**/s/Wendy Beetlestone, J.**

_____
**Date: 4/10/18**                           **WENDY BEETLESTONE, J.**